**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-cv-22307-BLOOM/Elfenbein

AILEEN MESSINGER, individually
and on behalf of L.M., a minor,

Plaintiff,

v.

SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
ELECTRONICS CO., LTD.,

Defendants.
_____________________________/

**ORDER ON PARTIAL MOTION TO DISMISS AND MOTION TO**
**STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT**

**THIS CAUSE** is before the Court upon Defendants Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd.'s[1] Partial Motion to Dismiss and Motion to Strike Plaintiff's Second Amended Complaint, ECF No. [47] ("Motion"). Plaintiff filed a Response, ECF No. [48], to which Defendants filed a Reply, ECF No. [50]. The Court has reviewed the Motion, the supporting and opposing submissions, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## I. BACKGROUND

In this product liability action, Plaintiff's Second Amended Complaint ("SAC") alleges that she and her child ("L.M.")[2] suffered damages after a fire started from an electric range stove

---

[1] Defendant Samsung Electronics Co., Ltd. filed a Partial Motion to Dismiss and Motion to Strike and Joinder, requesting to join Defendant Samsung Electronics America, Inc.'s Motion to Dismiss because the issues and law raised in the Motion to Dismiss are common to both Defendants. ECF No. [69]. Defendant's request to join the Motion to Dismiss is granted.

[2] The Court appointed Plaintiff as L.M.'s Next Friend to bring claims on L.M.'s behalf. *See* ECF No. [38]. Plaintiff retained counsel to represent L.M.'s interests. *See* ECF No. [43].

manufactured by Defendants. ECF No. [44]. Plaintiff identifies the stove as a Samsung slide-in electric range, model number NE58F9500SS/AA, serial number J1967DCK501190B, manufactured in 2018 by Defendants ("Subject Product"). *Id.* ¶ 17. The Subject Product was installed as a permanent appliance in Plaintiff's leased residential home in Miami, Florida. *Id.* The SAC alleges Defendants designed, manufactured, marketed, distributed, sold, and placed the Subject Product into the stream of commerce. *Id.* ¶ 18.

The SAC alleges that the Subject Product incorporated principal design features, including front-mounted control knobs used to activate the burners, a flat, glass-surfaced cooktop designed to be flush with adjacent countertop surfaces, and an oven door handle or horizontal bar that curved inward near the ends and projected further outward near its center. *Id.* ¶ 22. The Subject Product had design defects: the control knobs were designed such that they could be rotated from the "off" position to an active burner setting using minimal force, including light or incidental bodily contact; do not reliably require deliberate, multi-step push-and-turn activation sequence; and the knobs were positioned at the front of the Subject Product within a zone of frequent and foreseeable contact to users during routine kitchen activities. *Id.* ¶¶ 23–24.

The SAC alleges that temporarily placing items from a grocery store on available kitchen surfaces, including the Subject Product, is a foreseeable use that Defendants knew would occur, as evidenced by warnings, instructions, and marketing materials depicting or contemplating such placement and numerous claims, complaints, and reports of risks with flush glass-top stove designs. *Id.* ¶ 25. The Subject Product was not designed to adequately resist incidental contact with the control knobs, and that paired with a flush-mounted cooktop that invited temporary placement of items created a product that was unreasonably susceptible to unintended activation during foreseeable residential use. *Id.* ¶ 26.

The SAC alleges reasonable alternative designs existed at the time the Subject Product was designed and manufactured—such as rear- or top-mounted knobs, activation mechanisms requiring increased resistance to incidental contact, locking features, or other safeguards—that would have reduced or eliminated the risk of unintended activation. *Id.* ¶¶ 28-30. Defendants subsequently introduced redesigned "Precision Knobs" incorporating an additional activation step requiring users to pinch, push, and turn the control knob before activation could occur. *Id.* ¶ 31.

Beginning no later than 2013, Defendants received reports and information indicating that front-mounted control knobs on ranges incorporating similar design features could be activated through unintended or incidental contact during ordinary residential use. *Id.* ¶ 34. The Subject Product was manufactured in 2018 when Defendants knew or should have known of the risks based on consumer complaints, warranty claims, incident investigations, engineering analyses, post-market surveillance activities, internal testing, fire reports, claims data, recall-related investigations, and other sources. *Id.* ¶¶ 35–36. On August 8, 2024, Defendants issued a voluntary recall of ranges incorporating the same or substantially similar front-mounted control knob design as the Subject Product, due to the risk of unintended activation. *Id.* ¶ 41.

The SAC alleges that Defendants failed to warn that the front-mounted control knobs on the Subject Product could be activated by accidental contact from humans or pets, creating a fire hazard. *Id.* ¶ 56. Defendants failed to ensure that this warning reached all foreseeable users of the product, including renters and other non-purchasing occupants of residences in which the product was installed. *Id.* Defendants foresaw that consumers would place household or grocery items on or near the cooktop surface and such foreseeable user conduct required reasonable engineering safeguards and safer alternative designs, rather than reliance on warnings alone. *Id.* ¶ 58. Plaintiff

alleges the hazardous condition was latent and not discoverable through ordinary inspection by Plaintiff or other residential users. *Id.* ¶ 59.

On October 15, 2025, Plaintiff alleges that a box of chips was temporarily placed on the cooktop surface of the Subject Product, consistent with ordinary residential and foreseeable use of the Subject Product's flush-mounted cooktop surface. *Id.* ¶ 61. While Plaintiff was engaged in ordinary kitchen activity, including walking in front of the Subject Product and reaching toward the counter, incidental bodily contact by Plaintiff with the left front control knob caused that knob to move from the "off" position to an active setting without the required push-and-turn manipulation that the design purported to require. *Id.* ¶ 62.

As a direct result of the incidental contact, the left front high-output burner was unintentionally activated, generating heat sufficient to ignite the box of chips present on or near the cooktop surface. *Id.* ¶ 64. The ignition and resulting fire originated in the stovetop burner area of the Subject Product and occurred absent any deliberate attempt by Plaintiff to activate the burner. *Id.* ¶ 65. The severe systemic defect within the Subject Product's front-mounted control knob design was the overriding cause of the unintended burner activation and resulting fire and occurred during ordinary and foreseeable residential use of the Subject Product. *Id.* ¶ 66. After the fire, the City of Miami Fire Rescue Department conducted an investigation of the incident and identified the stovetop burner area of the Subject Product as the origin of the fire and classified the fire as accidental. *Id.* ¶ 67.

The SAC alleges that as a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Product and Defendants' conduct, Plaintiff and L.M. suffered substantial damages including, but not limited to, personal property damage, loss of use of the residence, cost of remediation and restoration, and exposure to hazardous post-fire conditions

throughout the residence. *Id.* ¶ 75. As a direct and proximate result of the fire, L.M. was exposed to smoke, soot, and toxic combustion byproducts, and suffered acute asthma attacks requiring medical attention and treatment. *Id.* ¶ 76. L.M. has continued to experience anxiety, fear, and emotional distress associated with the fire and its aftermath. *Id.* Plaintiff has likewise suffered ongoing anxiety, emotional distress, and trauma. *Id.*

The SAC brings four claims against Defendants: Count I—Strict Liability (Design Defect) and in the alternative, Manufacturing Defect; Count II—Strict Liability (Failure to Warn); Count III—Negligence (Design Defect) and in the alternative, Manufacturing Defect; and Count IV—Negligence (Failure to Warn). ECF No. [44].

## II. LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible

inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678. However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III. DISCUSSION

### A. Motion to Dismiss

Defendants filed a Partial Motion to Dismiss and Motion to Strike. ECF No. [47]. Defendants seek dismissal of the claims alleging a failure to warn—Count II for strict liability and Count IV for negligence—and the alternative manufacturing defect claims in Count I and Count III. ECF No. [47]. Defendants also seek to strike allegations about purported litigation conduct contained in the SAC. *Id.* Plaintiff responds that her claims are sufficiently pled, and the statements about litigation conduct are relevant to the claims alleged in this case. ECF No. [48].

#### 1. Failure to Warn Claims—Counts II and IV

Defendants argue that Count II and Count IV should be dismissed because Plaintiff has not stated a claim for failure to warn. ECF No. [47] at 3. Defendants argue Plaintiff's failure to warn claims are generic, do not allege facts about the content of the warning, and do not identify what warnings came with the range, how they were deficient, or how any other warning would have prevented the fire. *Id.* at 4.

Plaintiff responds that Counts II and IV state claims because the SAC does not rely on the warnings in a user manual and instead alleges that there is a "total lack" of warnings on the Subject Product or in consumer-facing marketing channels. ECF No. [48] at 3. Plaintiff contends that the duty to warn extends to all foreseeable users, including residential renters who interact with the appliance daily but are insulated from the original retail purchase materials. *Id.* at 4. Plaintiff argues Defendants have a duty to place conspicuous, immediate warnings on the physical appliance itself because the physical configuration of the Subject Product invites the risk. *Id.* Plaintiff contends that a hidden user manual inside a cabinet combined with paperwork belonging to previous occupants does not satisfy a manufacturer's duty to deliver a warning calculated to catch the attention of a consumer. *Id.* Plaintiff argues that she has detailed what warnings were missing on the product, how that omission directly targeted foreseeable renters, and how the presence of an on-product warning would have caused Plaintiff to act differently. *Id.* at 4–5.

Defendants reply that Plaintiff's Response includes new allegations regarding the lack of warnings on the product itself and across consumer-facing marketing channels, which do not appear in the SAC. ECF No. [50] at 2. Even if the Court considers those allegations, Defendants argue that Plaintiff still has not identified the instructions and warnings that did accompany the product. *Id.* at 2–3. Plaintiff admits she did not read the warnings Defendants provided in a user manual, which Defendants argue expressly acknowledges that Defendants provided warnings addressing those risks. *Id.* Because Plaintiff does not allege anything about the warnings provided or how they were inadequate, Defendants argue the Court should dismiss the failure to warn claims. *Id.*

"Under Florida Law, a claim for failure to warn, whether in negligence or strict liability, requires a plaintiff to show '(1) that the product warning was inadequate; (2) that the inadequacy

proximately caused her injury; and (3) that she in fact suffered an injury from using the product.'" *McCasland v. Pro Guard Coatings, Inc.*, 799 F. App'x 731, 733 (11th Cir. 2020) (quoting *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1321 (11th Cir. 2017)). Defendants argue that because Plaintiff has not adequately alleged how the warnings were inadequate, Plaintiff has not stated either a strict liability or negligence claim.

To survive dismissal, courts have required plaintiffs to state the contents of the warning provided or explain how the information provided was inadequate. *See Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 609 (11th Cir. 2008) (upholding dismissal of a failure to warn claim when the complaint did not "recite the contents of the warning label or the information available to the [the physician] or otherwise describe the manner in which the warning was inadequate); *Tsavaris v. Pfizer, Inc.*, No. 15-cv-21826, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) (dismissing a failure to warn claim because the plaintiff "fails to identify what risks the Wyeth Defendants actually warned of, including whether those warnings accompanied the [product] she received, and exactly how those warnings should have been rewritten to avoid any alleged inaccuracy."); *Jimenez v. Holiday CVS, LLC*, No. 22-cv-24242, 2023 WL 4251176, at *2 (S.D. Fla. June 29, 2023) (dismissing a failure to warn claim because plaintiff failed to allege what instructions or warnings came with the product and did not explain how the information provided was inadequate); *Dero Roofing, LLC v. Triton, Inc.*, No. 21-cv-688, 2022 WL 2104287, at * 5 (M.D. Fla. June 10, 2022) (same).

The SAC does not support Plaintiff's argument that she alleged exactly what warnings were missing on the product and that an on-product warning would have been adequate.[3] The SAC

[3] Defendants argue that Plaintiff's assertion in the Response that the warnings were not on the product itself or in consumer marketing channels is an impermissible attempt to amend the SAC in a response brief. ECF No. [50] at 2. A plaintiff cannot amend a complaint in response to a motion to dismiss. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). As such, the Court looks to the allegations in the SAC, not

alleges that the "Subject Product lacked adequate warnings and instructions including, but not limited to, those provided with the product, on the product itself, and through user manuals, labeling, marketing materials, product guides, warranty materials, and communications reasonably expected to reach foreseeable users." ECF No. [44] ¶ 101. The SAC alleges the Subject Product "lacked adequate warnings" regarding particular risks: that the front-mounted control knobs could be activated with incidental bodily contact, the knobs could be moved from the off position to an active setting without the deliberate manual push-and-turn manipulation, the unintended activation of the control knobs creates a risk of ignition of combustible items, and the flush-mounted "infinity edge" cooktop design invites users to place items on the cooktop surface. *Id.* ¶¶ 102–05. Where the SAC acknowledges that warnings were provided through multiple sources, including on the product itself, alleging that the Subject Product "lacked adequate warnings" is not sufficient as the SAC does not allege the content of the warnings provided or explain *how* the warnings were inadequate. *See Jimenez*, 2023 WL 4251176, at *2. Accordingly, the Motion to Dismiss is granted as to Counts II and IV.

### 2. Manufacturing Defect Claims—Counts I and III

Defendants argue that the alternative claims based on manufacturing defects contained in Counts I and III should be dismissed for failing to state a claim. ECF No. [47] at 5. Defendants contend that Plaintiff admits she "cannot presently identify any such defect with specificity" and alleges nothing about the manufacturing process or any deviation from specification or design. *Id.*

Plaintiff responds that Counts I and III permissibly raise alternative claims. ECF No. [48] at 5. Plaintiff argues she is not required at this stage to provide expert reports or set forth the precise process behind product failures. *Id.* Because the precise manufacturing specifications are within

any additional details in Plaintiff's Response.

Defendants' exclusive control, Plaintiff contends alternative pleading and discovery are needed to fully explore the claim. *Id.* at 5–6. Plaintiff states she identifies the recall for the relevant product line, which details the exact mechanical vulnerability and sequence of events at issue in this case. *Id.* at 6. Plaintiff argues the recall provides sufficient facts to survive dismissal with further information and evidence to be uncovered during discovery. *Id.*

Defendants reply that pleading an alternative claim requires alleging sufficient facts to survive dismissal. ECF No. [50] at 3. Plaintiff alleges general allegations and hopes discovery will support her, which is insufficient to survive dismissal. *Id.* Defendants argue the SAC does not allege any facts that the range deviated from its intended design or manufacturing specifications, and identifying a product recall is insufficient because it applies to an entire product line and does not speak to a manufacturing error or show that the particular unit had a manufacturing defect. *Id.* at 4.

"To prove a manufacturing defect claim under Florida law, a plaintiff must prove that 1) the product was defective, 2) the defect existed at the time the product left the defendant-manufacturer's control, and 3) the defect proximately caused the plaintiff's injuries." *Salinero v. Johnson & Johnson*, 400 F. Supp. 3d 1334, 1343–44 (S.D. Fla. 2019) (citing *Wolicki-Gables v. Arrow Int'l, Inc.*, 641 F. Supp. 2d 1270, 1285 (M.D. Fla. 2009); *Colville v. Pharmacia & Upjohn Co.*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008)). In product liability claims based on negligence, the basic elements of negligence apply, and the plaintiff must establish that the product was defective or unreasonably dangerous. *See Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1342 (M.D. Fla. 2003) (internal citations omitted). Defendants argue that because Plaintiff has not adequately alleged that there was a manufacturing defect, Plaintiff has not stated either a strict liability or negligence claim. *See Marzullo*, 289 F. Supp. 2d at 1342.

"Courts in the Eleventh Circuit regularly allow plaintiffs to plead multiple theories [of liability] (e.g., both design and manufacturing defect), providing that they adequately allege the defect." *Kilmer v. Howmedica Osteonics Corp.*, No. 14-45634, 2015 WL 5915950, at *4 (M.D. Fla. Oct. 8, 2015) (citation omitted). Courts have allowed claims to go forward when the plaintiff does not specify whether the defect is due to a design or a manufacturing defect provided that the defect is adequately pled. *See id.* at *5 (declining to dismiss a manufacturing defect claim, noting "it is difficult at this stage of the litigation for a plaintiff to know the source of the defect that was responsible for the harm caused"); *Bailey*, 288 F. App'x at 605 ("We are not convinced that Florida law applies a rigid distinction among the various theories of recovery available to plaintiffs under strict products liability such that a plaintiff would be required to expressly plead 'design defect' versus 'manufacturing defect' at the complaint stage." (citations omitted)); *Dye v. Covidien LP*, 470 F. Supp. 3d 1329, 1336 (S.D. Fla. 2020) ("It would be unreasonable for the Court to require Plaintiff to plead exactly *how* the implanted Product is defective and *how* it caused his alleged injuries when Plaintiff has not yet been afforded discovery or the benefit of expert testimony." (emphasis in original)).

As to a manufacturing defect, the SAC alleges:

> ln the alternative, pursuant to Federal Rule of Civil Procedure 8(d), Plaintiff alleges that the Subject Product may have contained one or more manufacturing defects that contributed to the incident described herein. Plaintiff cannot presently identify any such defect with specificity and reserves the right to amend as discovery, inspection, or testing may warrant.

ECF No. [44] ¶¶ 98, 132.

Standing alone, that allegation is insufficient as it is conclusory and fails to allege how the Subject Product was defective. However, the SAC alleges other multiple ways the Subject Product was defective, including that the front-mounted control knobs could be activated with incidental

bodily contact, the knobs could be moved from the off position to an active setting without the deliberate manual push-and-turn manipulation, the unintended activation of the control knobs creates a risk of ignition of combustible items, and the flush-mounted "infinity edge" cooktop design invites users to place items on the cooktop surface. ECF No. [44] ¶¶ 102–05. The SAC also alleges that Defendants manufactured the Subject Product, the Subject Product was defective at the time it left Defendants' control, and those defects caused Plaintiff and L.M. injury. ECF No. [44] ¶¶ 18–19, 75–76. Those allegations state each element of a manufacturing defect claim as they allege specific ways the Subject Product was defective, those defects existed at the time it left Defendants' control, and the defect caused Plaintiff's and L.M.'s injuries.

Defendants cite *Kuchenbecker v. Johnson & Johnson*, No. 19-61712-CIV, 2019 WL 4416079, at *2 (S.D. Fla. Sept. 13, 2019), to support their argument that the manufacturing claims should be dismissed. In *Kuchenbecker*, the court dismissed a plaintiff's defective manufacturing claims because the complaint failed to allege a manufacturing defect. *Id.* The court concluded that the factual allegations regarding the defective product related to the defective design and defective warning claims and were thus insufficient to state a defective manufacturing claim. *Id.*

Although the SAC does not allege facts that the Subject Product contained a *manufacturing* defect,[4] the elements of a manufacturing defect claim require showing that the product was defective, not that it was defective *because of* a manufacturing defect. *See Salinero*, 400 F. Supp. 3d at 1343–44.[5] Where Florida law does not require alleging the source of the defect with that

[4] Plaintiff points to the voluntary recall to support a manufacturing defect. ECF No. [48] at 6. Without knowing why the product was recalled, "the fact that the product was recalled does not inform us of the defect or unreasonably dangerous condition of the product." *Wright v. Howmedica Osteonics Corp.*, 741 F. App'x 624, 626 (11th Cir. 2018). And taking all facts in the SAC as true, the SAC alleges the recall was due to design defects. ECF No. [44] ¶¶ 40–41.

[5] Other courts that have dismissed defective manufacturing claims have held that the complaint insufficiently pled how the product was defective, not that it failed to specify whether the defect was due to a design or a manufacturing defect. *See, e.g.*, *Wright v. Howmedica Osteonics Corp.*, 741 F. App'x 624,

level of specificity, the Court does not, at this stage of proceedings, require the Plaintiff to allege whether the defects were caused by a design defect or a manufacturing defect. *See Bailey*, 288 F. App'x at 605. Accordingly, because the SAC alleges each element of a manufacturing defect claim, the Motion is denied as to the alternative claims in Counts I and III.

**B. Motion to Strike**

Defendants seek to strike Plaintiff's allegations about purported litigation conduct, ¶¶ 68–71 of the SAC, because the allegations are privileged, immaterial, and impertinent. ECF No. [47] at 6. Defendants argue that the allegations do not support any aspect of Plaintiff's claims and any such claim is barred by the Florida litigation privilege. *Id.* at 6–7.

Plaintiff responds that the allegations should not be stricken because they are related to the context of the claims and Defendants fail to demonstrate any prejudice. ECF No. [48] at 7. Plaintiff states she does not assert an independent claim based on the post-litigation conduct but the facts possess a direct relationship to the controversy and provide vital context regarding evidence, chain-of-custody, and potential spoliation. *Id.* at 8.

Defendants reply that Plaintiff includes the allegations to accuse Defendants of bad conduct and bias, which are the type of inflammatory and irrelevant allegations that should be stricken. ECF No. [50] at 4.[6]

---

626 (11th Cir. 2018) (dismissing a manufacturing defect claim because, beyond conclusory statements, the complaint did not allege how the product was defective); *Bequette v. Black & Decker (U.S.), Inc.*, No. 07-21609-CIV, 2007 WL 9702723, at *3 (S.D. Fla. Aug. 1, 2007) ("It is unclear whether Bequette intends to assert his claim based on a design defect or a manufacturing defect theory *and what the specific defect was*. Simply alleging that the product was 'defective' or that a defect was present is insufficient to place Black & Decker on notice of the claims against it, notwithstanding the low threshold required by Federal Rule of Civil Procedure 8(a)." (emphasis added)).

[6] Defendant's Reply states that one case cited in Plaintiff's Response does not contain the proposition for which it is cited and another case appears to be an artificial intelligence hallucination. *See* ECF No. [49] at 5. The Court cautions the parties that although artificial intelligence ("AI") may be a useful tool, it is known to fabricate, or "hallucinate" cases. Therefore, attorneys or *pro se* litigants who use AI to draft briefs may inadvertently include fake cases or quotations in their filings. Accordingly, persons who choose to use an

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," granting courts broad discretion in making this determination. Fed. R. Civ. P. 12(f); s*ee also Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318–19 (S.D. Fla. 2005); *Williams v. Eckerd Family Youth Alt.*, 908 F. Supp. 908, 910 (M.D. Fla. 1995). "[A] court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995). Although the court has broad discretion in exercising the power to strike, the ability to strike is usually considered to be drastic and often disfavored. *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)); *Fabing v. Lakeland Reg'l Med. Ctr., Inc.*, 2013 WL 593842, at *2 n.2 (M.D. Fla. February 15, 2013) (calling Rule 12(f) a "draconian sanction").

The SAC alleges the following regarding post-litigation conduct:

> Following commencement of this action, Plaintiff learned that a destructive inspection of the Subject Product had been scheduled in connection with a subrogation claim arising from the same incident. At the time the inspection was scheduled, this litigation was pending and the Subject Product constituted material evidence relevant to the claims asserted herein. Defendant failed to provide Plaintiff with notice of the planned destructive testing. After Plaintiff became aware of the inspection and raised objections, the inspection was cancelled. Communications concerning the cancellation identified the insured party's inability to attend as the reason for cancellation. Regardless of the ultimate reason for cancellation, destructive testing of material evidence had been scheduled without notice by Defendant to Plaintiff despite the pendency of this litigation.

ECF No. [44] ¶¶ 68–71.

---

AI tool do so at their own risk. An attorney or *pro se* litigant may be sanctioned if he or she submits any filing to the Court that includes hallucinated cases or misrepresents the content of a real case.

The Court concludes that those allegations do not warrant the harsh remedy of striking. As Defendants point out, the inspection was the subject of an emergency motion, ECF No. [19], which the parties briefed, ECF Nos. [23], [24], and the Court ruled upon, ECF No. [27]. Ultimately, the emergency motion was denied as moot because the inspection was canceled and Defendants communicated with Plaintiff to confirm that any future testing will be conducted with the parties' involvement. *See* ECF No. [27]. As such, the allegations are related to the case, are part of the record, and, where Plaintiff confirms the allegations do not form the basis of an independent claim, do not confuse the issues or prejudice Defendants. Accordingly, the Motion to Strike is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, **ECF No. [47]**, is **GRANTED in part and DENIED in part**.
2. **Count II—Strict Liability (Failure to Warn)** and **Count IV—Negligence (Failure to Warn)** of the Second Amended Complaint are **DISMISSED**.
3. Defendant Samsung Electronics Co., Ltd.'s Partial Motion to Dismiss and Motion to Strike and Joinder, **ECF No. [69]**, is **GRANTED**.
4. Defendants shall file an Answer to Counts I and III of the Second Amended Complaint **by November 24, 2026**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 10, 2026.



**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Aileen Messinger
801 N. Venetian Drive
Unit 202
Miami, FL 33139
PRO SE